347 So.2d 184 (1977)
STATE of Louisiana
v.
Charles E. WILLIAMS.
No. 58974.
Supreme Court of Louisiana.
June 20, 1977.
*185 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
Maurice T. Hattier, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
SUMMERS, Justice.
In a bill of information filed on July 19, 1974 the District Attorney of Orleans Parish charged that Charles E. Williams "did wilfully and unlawfully distribute a controlled dangerous substance, to-wit: Heroin." After a trial by jury on October 2, 1974 Williams was found guilty as charged and sentenced to hard labor for life.
Four assignments of error are urged on this appeal.

Assignment 1
On the day of trial the defense filed a motion to quash. The motion alleged that the bill of information was fatally defective in that it failed to inform the accused of the nature and cause of the accusation against him by not naming the person to whom the heroin was distributed; the motion also alleged that the bill of information violated Articles 465 and 532 of the Code of Criminal Procedure.
Whereupon the State moved to amend the bill of information by adding that the heroin was distributed "to John Felts". Finding that this amendment met the objections alleged in the motion to quash, the trial judge allowed the amendment and denied the motion to quash. Although an objection was entered to the ruling, no motion *186 for a continuance was made by the defense, and the trial commenced.
When an indictment fails to conform to the requirements of Chapters 1 and 2 of Title XIII of the Code of Criminal Procedure pertaining to the forms and special allegations of indictments, the court may permit the district attorney to amend the indictment to correct the defect. La.Code Crim.Pro. art. 532. And before the trial begins this right extends to an amendment involving a defect of substance. La.Code Crim.Pro. art. 487. No prospective juror having been called at the time of the amendment, the trial had not begun. La. Code Crim.Pro. art. 761; Comments, La. Code Crim.Pro. art. 532.
When an indictment is amended, unless a defendant moves for a continuance on the ground that he is prejudiced thereby and requires additional time to prepare his defense, he cannot later contend that he was prejudiced by the amendment. La. Code Crim.Pro. art. 489.
Therefore, if adding the name of the person to whom the heroin was distributed could be considered a substantive change, such an amendment was permissible at the time it was made, and there was no error in the ruling of the trial judge allowing the amendment and denying the motion to quash.

Assignments 2, 3 and 4
The evidence at trial discloses that Detective Jerry Owensby with the Drug Enforcement Administration was contacted by a cooperating individual (C.I.) and his wife at approximately 6:15 p.m., on March 11, 1974 at the New Orleans Regional Office. They, together with other special agents, including Sergeant John Felts, briefly discussed narcotic trafficking in and around the intersection of Jackson and Prieur Streets in New Orleans. A plan was formulated to purchase drugs from defendant Williams to obtain evidence against him.
After recording the serial numbers of currency, Owensby gave it to Felts for use in the planned purchase. He searched the informant's person for narcotics, or large amounts of money and found neither. Felts, the informant and his wife then departed in a government vehicle, a blue van, followed by Owensby and other special agents. They proceeded to the intersection of Jackson and Prieur Streets. When Felts, the informant and his wife left the van, Owensby and the special agents departed to avoid detection by the drug traffickers in the area, for such a disclosure would in all probability reveal the undercover role of Felts, the informant and his wife.
The three then entered the Club DeVille Bar at 3200 Jackson Avenue where they were approached by defendant Williams. Williams said he had some good stuff but wanted to talk about it outside. Once outside they learned that Williams had only ten papers of heroin for sale. With this information they drove away to contact Owensby by radio from the van, advising him what Williams had for sale. Owensby told them to go ahead with the purchase.
On their way back to Jackson and Prieur, Felts gave the informant seventy dollars for use in the transaction. Upon arrival they contacted Williams, agreed upon the price and the informant and Felts pooled their funds for the purchase in the presence of Williams so that he would not suspect that the informant was there as a witness. Felts then followed Williams around the corner and waited while he went into an alleyway. Three or four minutes later Williams returned and handed the heroin to Felts in ten aluminum foil packets. With this evidence the three undercover agents returned to the Regional Office where Felts delivered the heroin to Owensby. Owensby again searched the informant and found no narcotics or money on his person.
On three occasions during the trial defense counsel sought to have the informant's identity furnished. The first time was during cross-examination of Detective Owensby when he was asked, "Who is the C.I. and his wife?" The State objected and the objection was sustained.
Later, during the cross-examination of Sergeant Felts, defense counsel asked if the *187 C.I. had informed Felts of the nature of a conversation the C.I. had with a man at the Club DeVille. The State objected to this question and the objection was sustained on the ground that the question called for hearsay testimony. Defense counsel then stated, "If it's hearsay, bring the individual in and I will ask the C.I. what went on." Whereupon the trial judge admonished defense counsel not to try to get things in evidence by his statements. A defense objection was then made to the ruling.
Another bill of exceptions was reserved by defense counsel when he asked Felts if he recalled the name of the C.I., the State objected and the court sustained the objection.
Again, while cross-examining Felts, defense counsel asked him what he did with the evidence (heroin) received by him from Williams. Felts replied that it was surrendered to Owensby at the office in the presence of the C.I., his wife and another agent.
Felts was then asked, "Did the C.I. supply any identification of who the person who made the transaction may be?"
Felts answered, "Yes, sir."
"Your Honor, I think it would be very pertinent to have the C.I. here," defense counsel asserted.
The trial judge responded that it was irrelevant to the facts of the case.
Defendant argues that it was error for the trial judge to sustain the State's objections to identifying the confidential informant and his wife, since he was a participant in the transaction. And it was error, the defense contends, to deny the right to inquire into the conversation at the Club DeVille between the confidential informant and the unidentified male.
The informer privilege is a right which the State has to withhold the identity of one who supplies information to law enforcement officials concerning crime. It is founded upon public policy and seeks to advance the public interest in effective law enforcement. State v. Dotson, 260 La. 471, 256 So.2d 594 (1972), cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972).
In keeping with this policy, courts order the disclosure of the confidential informant's name only under exceptional circumstances to prevent injustice. The burden is upon the defendant to show the exceptional circumstances justifying the disclosure, and much discretion is allowed the trial judge's finding on this showing. There is no fixed rule for ordering disclosure of the informant's identity. State v. Dotson, supra.
This can be said, however, there must be some act shown, some cogent reason advanced, why the identity of the informant is required.
In this case the defense did not make known to the trial judge the reason for wanting to know the identity of the informant or how it would affect his defense. Nor does the brief in this Court set forth the reason why the defense sought the informant's identity.
As this Court held in State v. Dotson, supra:
"Effective law enforcement requires that the confidentiality of the names of crimeinformers be safeguarded. In supplying information to a defendant in a criminal proceeding, this Court cannot sacrifice fairness to the public. Neither can it ignore the public's interest in effective law enforcement."
The defendant has neither alleged nor shown prejudice as a result of the failure of the trial judge to order disclosure of the informant's identity. The proof of guilt is overwhelming, and Article 921 of the Code of Criminal Procedure denies this Court authority to reverse.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, Justice, concurring.
For the time, I concur in the disposition of Assignments 2, 3, and 4.
These assignments present a very close issue of reversible error. They concern the failure of the trial court to require the state witnesses to furnish the name of a confidential informant who was, aside from the *188 accused, the sole non-governmental witness and participant in the transaction, the illegal sale of heroin, with which the accused is charged. The issue arose during the trial on the merits of the accused's innocence or guilt.
The confidential informant had been approached by the defendant and had introduced him to the government agent. The defendant subsequently sold the agent the illegal substance. The informant had given the accused $70, following which the accused and the agent went around the corner, where the agent received from the defendant the aluminum foil packets containing the heroin.
The identity of the informant was thus normally discoverable. As the majority on rehearing stated in State v. Dotson, 260 La. 471, 256 So.2d 594, 606 (1971): "When the prosecution's case shows that the informer participated in the crime, the informer's identity should be disclosed to the defendant. In such cases, the informer does more than furnish a tip that enables the police to make an arrest. While working with the police, he takes part in the illegal transaction itself."
Thus, if the record indicated any reason why disclosure of the identity of the informer would be helpful in preparing his defense, the accused was entitled to disclosure of the informant's name. This would be so, whether the purpose for which the identity was sought was to subpoena the only non-governmental witness to the transaction, or just to interview him to ascertain whether his version sheds light on the transaction more favorable to the accused than that of the governmental agents.
As we summarized in State v. Dabon, 337 So.2d 502, 503 (with full citation of authority), "* * * the privilege must give way where the disclosure of an informer's identity. . . is relevant and helpful to the defense of an accused or to the fair determination of an issue before the court."
In the present case, however, the difficulty in reversing is that, aside from formal record-curiosity as to the informer's identity, the defendant did not and does not advance any purpose for ascertaining that individual's name. He did not indicate at or before the trial, for instance, that he desired to subpoena him or to interrogate him. The accused's counsel did not, for instance, allege unsuccessful attempts to ascertain the identity and whereabouts of the informant. (In fact, the record is open to the construction that the accused and the informant knew one another before the encounter leading to the sale.)
Further, aside from refusing to require identification by name of the informant, the trial court permitted rather full crossexamination on the defendant's behalf as to the informant's employment background, (lack of) criminal record, and method of compensation (by money) for his services.
Under all of the circumstances, I am unable to say that reversible error occurred. Nevertheless, under the principles noted above, in my opinion, the trial court committed error by its failure to require the governmental agents to identify their informant, a participant in and witness to the offense with which the accused is charged and for which he was on trial.
I respectfully concur, with the reservations so expressed.
TATE, J., concurs and assigns reasons.
DIXON and CALOGERO, JJ., concur.