900 So.2d 867 (2005)
STATE of Louisiana
v.
Noel J. AUSTIN.
No. 04-KA-993.
Court of Appeal of Louisiana, Fifth Circuit.
March 1, 2005.
*871 Paul D. Connick, Jr., District Attorney, 24th Judicial District, Parish of Jefferson, State of Louisiana, Terry M. Boudreaux, Thomas J. Butler, Assistant District Attorneys, Appellate Counsel, Walter G. Amstutz, Vincent Paciera, Jr., Assistant District Attorneys, Trial Counsel, District Attorney's Office, Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee, State of Louisiana.
Davidson S. Ehle, III, Ehle & Hesni, Inc., Gretna, Louisiana, for Defendant/Appellant, Noel J. Austin.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD, and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
Noel Austin appeals his convictions of attempted first degree murder (two counts), possession with intent to distribute cocaine, and aggravated battery. We affirm.
On October 9, 2003 the Jefferson Parish District Attorney filed an eight-count bill of information against Noel J. Austin, charging him with six counts of attempted first degree murder of police officers in violation of La.R.S. 14:27 and 14:30 (counts one through six), one count of possession of more than 400 grams of cocaine in violation of La.R.S. 40:967(F) (count seven), *872 and possession with intent to distribute cocaine in violation of La.R.S. 40:967(A) (count eight).[1] At arraignment the defendant pleaded not guilty.[2] On November 13, 2003, the trial court denied the defendant's motions to suppress the evidence and to reveal the identity of the informant.
On February 18, 2004, the defendant was tried before a twelve-member jury, which found him guilty as charged on counts one, two, and eight; not guilty on counts three, four, and six; and guilty of the responsive verdict of aggravated battery on count five.
On March 4, 2004, the trial court denied the defendant's motion for a new trial and sentenced him to serve fifty years of imprisonment at hard labor for the attempted first degree murder convictions, without benefit of parole, probation, and suspension of sentence, ten years of imprisonment at hard labor for the aggravated battery conviction, and thirty years of imprisonment at hard labor for the conviction of possession with intent to distribute cocaine. The trial court denied the defendant's motion to reconsider sentence and granted his motion for an appeal.
That same day, the State filed a habitual offender bill of information against the defendant, based on prior convictions of distribution of cocaine in 1991 and attempted murder in 1995, allegations that the defendant denied.[3] After a habitual offender hearing on May 18, 2004, the trial court found the defendant to be a third felony offender, vacated his original sentence on count one, and imposed a sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.[4] This timely appeal follows.

FACTS
At trial, Louisiana State Police (LSP) Trooper Warren Ayo testified he is assigned to the Gulf Coast HIDO (High Intensity Drug-trafficking Officers), a task force that works in conjunction with the federal Drug Enforcement Administration (DEA). With the assistance of a confidential informant and undercover DEA Agent Carlton Simmons, HIDO formulated a plan to arrange a purchase of one kilogram of cocaine from Noel Austin for $21,500 on the evening of April 11, 2003. The transaction was planned to take place at Chevy's Restaurant on Manhattan Boulevard in Harvey, Jefferson Parish.
Several members of the Jefferson Parish Sheriff's Office (JPSO) assisted the LSP in the operation, including Detectives Danny Jewell and Eric Davis, who were together in one vehicle, and Detectives Michael Pizzolato and Brandon Boilan, who were together in another vehicle. The officers were positioned behind Chevy's, in the parking lot of the Palace Theatre, and observed the defendant arrive alone in a red Yukon.
*873 Detectives Jewell and Pizzolato testified that the defendant parked his vehicle and went into Chevy's. The defendant returned to his vehicle, but went back and forth between his vehicle and Chevy's several more times. At some point, the defendant was on foot in the parking lot and met with an individual in another car. (This individual was later identified as the defendant's brother, Stokely Austin.)
Detective Boilan, using high-powered binoculars, observed the defendant receive something from the individual in the car (Stokely Austin). The defendant returned to the Yukon and drove to the north side of Chevy's parking lot, where he parked. Detective Boilan observed a black male (the confidential informant) approach the Yukon and speak with the defendant. However, no objects were exchanged between the two men. Detective Boilan testified that, after the black male (confidential informant) walked to the rear of the Yukon, Trooper Ayo signaled for all the officers to move in and "take down" (arrest) the defendant.
Prior to the takedown order, however, Agent Simmons and the confidential informant had met with the defendant inside the restaurant. Agent Simmons testified about the events inside the restaurant leading up to the takedown order. According to Agent Simmons, the defendant wanted to count the money in the restaurant. Agent Simmons testified that he showed the money to the defendant, who seemed satisfied. The defendant went outside, made a telephone call, and returned inside the restaurant. Then, Agent Simmons, the confidential informant, and the defendant walked outside. Agent Simmons went to his undercover vehicle, while the informant walked over to the defendant's vehicle. The informant approached Agent Simmons' vehicle and told Agent Simmons that the defendant had the cocaine. After Agent Simmons communicated this information to the other officers, Trooper Ayo gave the takedown order to move in and arrest the defendant.
Upon receiving the takedown order, Troopers Bergeron and Baron moved in and parked their undercover vehicle at an angle behind the defendant's Yukon. Detective Jewell ran from his undercover vehicle and positioned himself on the median in front of the Yukon, facing the passenger's side headlight. Troopers Bergeron and Baron got out of their vehicle and stood behind the Yukon.
All the officers repeatedly ordered the defendant to stop and surrender, but instead the defendant backed out of his parking space. According to Troopers Bergeron and Baron, the defendant backed toward them, but they moved out of the way. The Yukon ultimately collided with the undercover vehicle.[5] Trooper Derrick Stewart, who was on foot in the parking lot, testified that he fired at the Yukon when it narrowly missed Trooper Bergeron.
At that point, Detectives Jewell, Pizzolato and Boilan were on foot in front of the Yukon, wearing marked police clothing. They too repeatedly ordered the defendant to stop. However, the defendant placed the vehicle in gear and accelerated forward. All three officers fired their weapons *874 at the defendant: Detective Boilan, who had moved away from Detectives Jewell and Pizzolato and was in the clear, fired in defense of the two detectives, while Detectives Jewell and Pizzolato fired in defense of their own lives.
Detective Pizzolato testified that he moved out of the way. Detective Jewell testified that he was watching the defendant through the window and saw him violently jerk the wheel and turn his body, causing the Yukon to swerve to the right. The Yukon missed Detective Jewell by approximately eighteen inches.[6] As Detective Jewell followed alongside the Yukon, he heard the vehicle's RPMs increase. He fired another shot into the Yukon to divert the defendant from "going at" Detective Davis.
Detective Davis testified that the Yukon proceeded straight, but then accelerated toward him. Detective Davis did not discharge his weapon at the Yukon, and he was able to move to safety. The Yukon then passed through an outlet in Chevy's parking lot, ran over the median, and crashed into a light pole in the Palace Theatre's parking lot. Detective Boilan was beside the vehicle after it crashed. He heard a loud explosion, which he thought was gunfire, and fired into the driver's side window of the Yukon. The officers subsequently determined, however, that the defendant was unarmed.
The defendant was shot during the gunfire. When the paramedics arrived, they cut open the defendant's pants leg, at which time the kilogram of cocaine fell to the ground. JPSO Lieutenant Bruce Harrison, the State's narcotics expert, testified that the cocaine was packaged in a manner consistent with distribution, not for personal use, and that it had a street value of between $100,000 and $200,000.
At trial, Detective Boilan explained that the type of investigation they generally conduct is termed a "rip," which means that the drug transaction is not actually completed. Rather, the officers arrest the suspect after the drugs are delivered and he is in possession of the drugs.
In addition to the trial testimony, the State introduced a diagram of the parking lot, which was used by the witnesses to illustrate the evening's events. The defendant did not call any witnesses, but introduced two diagrams that also were used by some of the witnesses during their testimony.

ASSIGNMENTS OF ERROR
We list the assignments of error in the order listed in the defendant's brief, although we discuss them out of order:
1. The District Court, with all due respect, erred in denying the appellant's Motion to Suppress Evidence.
2. The District Court, it is respectfully averred, erred in denying the appellant's Motion to Disclose the Identity of the Confidential Informant.
3. The District Court, with all due respect, erred in denying the appellant's Motion for a Mistrial, founded upon prejudicial trial in progress publicity.
4. The jury erred in finding the defendant guilty of two counts of attempted first [degree] murder and one count of aggravated battery.
5. Whether or not the appellant's convictions and punishment for attempted first degree murder and possession with intent to distribute cocaine placed him in double jeopary [sic].

*875 ASSIGNMENT OF ERROR NUMBER FOUR
In his brief, the defendant raises issues regarding the sufficiency of the evidence and other trial errors. When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id. Therefore, the sufficiency of the evidence must be addressed before the other assignments.
In this assignment, the defendant contends that the evidence was insufficient to support his convictions of attempted first degree murder and aggravated battery. Specifically, the defendant contends the State failed to prove he had the specific intent to kill as to the attempted murder convictions. As to the aggravated battery conviction, the defendant contends that the State failed to prove he possessed the general intent to commit aggravated battery. In response, the State asserts that the evidence was sufficient to support the attempted murder convictions; however, the State fails to address the aggravated battery conviction.
The constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998), citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The rule as to circumstantial evidence is that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La.R.S. 15:438. This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. State v. Wooten, 99-181, p. 4 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208.
Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Id.
The defendant was convicted of the attempted first degree murder of Detectives Jewell and Pizzolato. According to La.R.S. 14:30(A)(2), first degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm upon a peace officer engaged in the performance of his lawful duties. La.R.S. 14:30(B)(1) defines a "peace officer" as "any peace officer, as defined in R.S. 40:2402, and includes any. . . sheriff, deputy sheriff, local or state policeman . . . [or] federal law enforcement officer . . . ."
The crime of attempted murder, whether first or second degree, requires proof of the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Girod, 94-853, pp. 5-6 (La.App. 5 Cir. 3/15/95), 653 So.2d 664, 668. Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). Because specific intent is a state of mind, it need *876 not be proven as a fact, but may be inferred from the circumstances and actions of the accused. Girod, supra.
In State v. Jones, 03-180 (La.App. 3 Cir. 9/10/03), 855 So.2d 408, writ denied, State ex rel. Hancock v. State, 04-0409 (La.1/14/05), 889 So.2d 262, the court found the evidence was sufficient for the jury to infer that the defendant had the specific intent to kill a deputy sheriff and affirmed the defendant's conviction of attempted second-degree murder.[7] In Jones, the officer pursued the defendant's vehicle on to a dead end street as it fled from a house that the defendant had burglarized. The vehicle came to a stop near a large fence located at the end of the street. The officer parked his vehicle on the road, got out of the car with his weapon drawn, and ordered the occupants of the truck to surrender. The officer said it appeared that the defendant looked in his rear view mirror and observed the officer standing on the road to the left of the driver's side door. However, the truck's engine revved and the vehicle backed toward the officer at a high rate of speed. The officer jumped on the trunk of his car to avoid being struck by the defendant. Jones, 03-180 at p. 2, 855 So.2d at 410.
The third circuit concluded that the circumstances indicated the defendant had the specific intent to kill the officer because the defendant drove straight at him while accelerating. The court noted that alternate routes were available to the defendant to avoid the officer. Jones, 03-180 at p. 6, 855 So.2d at 412.
In contrast, in State v. Amos, 550 So.2d 272 (La.App. 4 Cir.1989), the court concluded the evidence was insufficient to prove the defendant had the specific intent to kill to support his attempted manslaughter conviction.[8] In that case, police officers were in pursuit of the defendant's vehicle, when two other officers parked their unmarked police car across the street, completely blocking the path of the defendant's vehicle. There was no way the defendant could avoid hitting the unmarked police vehicle, and the officers left the vehicle when they realized a collision was imminent. As the defendant approached the officers' car, he accelerated and veered to one side of the officers' car, toward an embankment where Officer Hacker was standing. The defendant hit the officers' car and the embankment, while narrowly missing Officer Hacker. 550 So.2d at 276.
In Amos the court concluded that the evidence did not support an intent to kill, as follows at 276:
The facts do not support a determination that Jackson [defendant] had a specific intent to kill Officer Hecker. It is much more probable that Jackson was merely trying to avoid hitting the police car head-on by veering towards one side. There is no evidence to suggest that he chose to veer to the side where Hecker was standing for any reason other than by chance.
In the present case, the defendant contends that he was merely trying to escape, not to kill any of the officers. However, we find that the State proved the defendant had the intent to kill Detectives Jewell and Pizzolato. The officers were visibly attired as police officers, had their weapons drawn, and were ordering the defendant *877 to surrender. Detective Jewell was approximately four feet in front of the defendant's vehicle and Detective Pizzolato was within arm's length to the right of Detective Jewell. According to Detective Jewell, the defendant looked at him, placed the vehicle in drive, revved the engine, and drove right at him. Detective Pizzolato similarly testified that the vehicle accelerated, the tires "chirped," and the defendant drove right at him. Both officers testified that they would have been struck had they not moved, and they both fired their weapons at the defendant's vehicle in self-defense.
According to Detective Boilan, both officers were in danger, and he fired his weapon at the Yukon to defend them. Although Detective Jewell admitted on cross-examination that the only path available to the defendant was to go forward because the troopers' car was behind the defendant, he acknowledged on re-direct examination that the defendant could have backed up and driven in another direction. Thus, this case is more similar to State v. Jones, where the defendant accelerated directly at the officer, than to State v. Amos, where the defendant landed in the officer's location by chance.
In closing argument the defendant vigorously argued that he was merely trying to evade arrest. By returning the guilty verdicts as to Detectives Jewell and Pizzolato, the jury obviously rejected the defendant's alternative hypothesis.
It is the role of the fact-finder to weigh the credibility of the witnesses, and a reviewing court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State v. Wallace, 00-1745, p. 8 (La.App. 5 Cir. 5/16/01), 788 So.2d 578, 584, writ denied, 01-1849 (La.5/24/02), 816 So.2d 297. In view of the evidence that the defendant accelerated directly at the officers despite their orders to surrender and that there were alternative avenues of escape, we find the jury rationally concluded under the Jackson standard that the defendant had the specific intent to kill Detectives Jewell and Pizzolato.
The defendant also contends that the evidence was insufficient to support his aggravated battery conviction because the only reason Detective Davis was placed in danger was because the Yukon swerved, not because the defendant drove directly at Detective Davis. The State does not respond to this claim in its brief.
The jury found the defendant guilty of aggravated battery as to Detective Davis, rather than attempted first degree murder. Under La.C.Cr.P. art. 814(A)(4), aggravated battery is a legislatively authorized responsive verdict to attempted first degree murder. Aggravated battery is defined as the intentional use of force or violence upon the person of another committed with a dangerous weapon. La.R.S. 14:33 and 14:34. State v. Harrell, 01-841, p. 5 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1018.
The Louisiana Supreme Court has acknowledged that an essential element of aggravated battery, the lesser crime, is not an essential element of the greater crime, attempted murder. State ex rel. Elaire v. Blackburn, 424 So.2d 246, 251-252 (La. 1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983). Specifically, attempted murder does not require the use of force or violence upon the person of the victim and it does not require the use of a dangerous weapon. Blackburn, 424 So.2d at 249, n. 5. Thus, the evidence adduced to support the greater offense does not automatically prove the lesser. Id.
*878 When a defendant does not object to a legislatively responsive verdict, the defendant's conviction will not be reversed, whether or not that verdict is supported by the evidence, as long as the evidence is sufficient to support the offense charged. Blackburn, 424 So.2d at 252; accord, Harrell, 01-841 at p. 4, 811 So.2d at 1017. The Blackburn court explained, at 251-252:
It would be unfair to permit the defendant to have the advantage of the possibility that a lesser "compromise" verdict will be returned (as opposed to being convicted of the offense charged) and then to raise the complaint for the first time on appeal, that the evidence did not support the responsive verdict to which he failed to object.
In the present case, the defendant asserted he had no objections to the trial court's jury charges, which included aggravated battery as a responsive verdict. Accordingly, the defendant is entitled to a reversal of his conviction only if the evidence is insufficient to support a conviction of the charged offense, attempted first degree murder. See, Harrell, 01-841 at p. 6, 811 So.2d at 1018; accord State v. Wilkinson, 00-339, p. 15 (La.App. 5 Cir. 10/18/00), 772 So.2d 758, 766, writ denied, 00-3161 (La.10/12/01), 799 So.2d 494.
The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, supra. In this case, we find the evidence was sufficient to convict for the attempted first degree murder of Detective Davis.
According to Detective Davis, he was positioned slightly to the right of the exit in Chevy's parking lot; he diagrammed his position and the vehicle's movement on State's Exhibit 2. Detective Davis testified that after the defendant's vehicle went toward Detectives Jewell and Pizzolato, it started straight and then swerved toward him. Detective Davis described the vehicle as "[a]ccelerating towards" him. He testified it was not necessary for the defendant to aim at him in order to exit the parking lot. Detective Davis testified he was dressed with a badge around his neck, a radio clipped to his belt, had drawn his firearm, and was giving loud commands identifying himself as the police and ordering the defendant to stop. Detective Davis said it was "very obvious" that he was a law enforcement officer.
According to Detective Jewell, after the defendant nearly struck him, the vehicle traveled toward the outlet in Chevy's parking lot. However, it veered toward an area where Detective Jewell believed that Detective Davis was standing. Detective Jewell heard the vehicle's RPMs increase. From his vantage point on the side of the truck, he could see the defendant[9] "ducking down," but still able to see over the dashboard. At that point, Detective Davis fired a shot through the driver's window "in attempt to divert him from going at Detective Davis."
Viewed in the light most favorable to the State, we find this evidence was sufficient for rational jurors to conclude that the State proved the essential elements of the charged offense, attempted first degree murder of Detective Davis, beyond a reasonable doubt. Hence, the jury did not err in returning the responsive verdict of aggravated battery.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant contends that the trial judge erred in denying his motion to *879 suppress evidence because there was insufficient probable cause to justify his warrantless arrest. The State responds that the trial judge properly denied the motion.
On November 13, 2003, the trial court held a hearing on the defendant's motions to suppress and to reveal the identity of the confidential informant.[10] Trooper Ayo was the sole witness who testified at the hearing. Trooper Ayo stated that he was personally familiar with the confidential informant in this case and estimated that the informant had assisted a "couple of times" in the past. Trooper Ayo testified that he told the informant to arrange the meeting at Chevy's and the defendant agreed to meet there. Trooper Ayo stated that the actual drug transaction was not completed. Trooper Ayo testified that the defendant was shot while attempting to run over the police officers, and that the cocaine fell to the ground when the paramedics cut the defendant's pants to render medical assistance.
An officer may make a warrantless arrest when the officer has probable cause to believe that the person to be arrested has committed an offense. State v. Davis, 00-278, p. 16 (La.App. 5 Cir. 8/29/00), 768 So.2d 201, 212 (citing La. C.Cr.P. art. 213), writ denied, 00-2730 (La.8/31/01), 795 So.2d 1205. Probable cause to arrest exists when the facts and circumstances within an officer's knowledge, and of which he has reasonable, trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Scales, 93-2003, p. 6 (La.5/22/95), 655 So.2d 1326, 1331, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996). An arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Gibson, 97-1203, p. 6 (La.App. 5 Cir. 3/25/98), 708 So.2d 1276, 1280.
A confidential informant may provide adequate information to establish probable cause for a warrantless arrest, so long as the basis for the information and the informant's reliability, when examined under the totality of the circumstances are established. State v. Fisher, 97-1133, p. 8 (La.9/9/98), 720 So.2d 1179, 1184, citing Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
While an informant's past record for accuracy and reliability is one factor to take into account in determining the reliability of the tip in question, this alone will not always support a finding of probable cause. State v. Ingram, 98-813, pp. 4-5 (La.App. 5 Cir. 12/29/98), 726 So.2d 1000, 1002. Corroboration of details of an informant's tip by independent police investigation is valuable in applying the totality of the circumstances analysis. Id.
The trial judge's determination on the motion to suppress will not be disturbed on appeal, unless it is clearly wrong. State v. Casey, 99-0023, p. 6 (La. 1/26/00), 775 So.2d 1022, 1029,cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). In reviewing the ruling on the motion to suppress, the appellate court will look to the totality of the evidence as presented at the hearing of the motion and the trial. State v. Manson, 01-159, p. 5 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 755.
*880 In the present case, we find that the police had probable cause to support the defendant's warrantless arrest. While it is undisputed that the informant was the only person who actually walked up to the defendant's car and observed the defendant in possession of cocaine, the arrest was not based solely on this observation. Prior to this, the police saw the defendant appear at the pre-arranged meeting with the informant and Agent Simmons and observed the defendant receive a package from Stokely Austin. Thus, when Trooper Ayo gave the signal to arrest the defendant, the confidential informant's tip, corroborated by independent police observations of the defendant's actions at Chevy's, provided probable cause for a warrantless arrest. Accordingly, the trial court committed no error in the denial of the defendant's motion to suppress.

ASSIGNMENT OF ERROR NUMBER TWO
The defendant contends that the trial judge improperly denied his motion to reveal the identity of the confidential informant. The defendant asserts that disclosure was essential to a determination of the defendant's guilt or innocence, because the informant was the only person who actually saw the cocaine before the officers moved in to arrest the defendant. The State responds that the trial judge properly denied the motion because the informant's participation in this case was minimal and because the defendant failed to meet his burden of showing exceptional circumstances to justify disclosure.
As a general rule, an informant's identity is privileged information. State v. Oliver, 430 So.2d 650, 652 (La.1983), cert. denied, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983). This privilege is founded upon public policy and seeks to further and protect the public interest and law enforcement by encouraging people to supply information to the police by protecting their anonymity. Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957).
Thus, the identity of an informant should be made known to the accused only when his right to prepare his defense outweighs the need for protection of the flow of information. State v. Zapata, 97-1230, p. 7 (La.App. 5 Cir. 5/27/98), 713 So.2d 1152, 1158, writ denied, 98-1766 (La.11/6/98), 727 So.2d 443. The burden is on the defendant to show exceptional circumstances warranting disclosure of the name of a confidential informant. Id. The trial court is accorded great discretion in making such a determination. Id.
When an informant only supplies the information and does not participate in the transaction, disclosure is not required. Id. However, when the informant plays a "crucial role" in the transaction and the defense meets its burden of showing exceptional circumstances justifying disclosure, disclosure is required. If the informant does not participate, the defendant cannot compel disclosure. Id.
The determination of whether a proper balance between protection of the flow of information and an accused's right to prepare his defense renders nondisclosure of the identity of the C.I. erroneous depends upon the particular circumstances of each case. Id. (citing Roviaro, supra). The court must consider the crime charged, the possible defenses, significance of the informer's testimony and other relevant factors. Id. In addition, the possibility that the testimony of a confidential informant may help the defense contradict the allegations of a police officer is insufficient to warrant disclosure. State v. Becnel, 95-591, p. 9 (La.App. 5 Cir. 1/30/96), 668 So.2d 1281, 1286.
*881 At the hearing on November 13, 2003, the defendant argued that disclosure of the informant's identity was required because the informant was the only person who could testify about what the informant observed, and that he "could also add to the defense ... as to what the police officers were doing and if my client actually took any aggressive action with . . . his car, towards any of those officers." Thereafter, the trial court denied the motion to reveal the informant's identity.
The defendant argues on appeal that informant played a "crucial role" in this case because he was the only person who actually saw the defendant in possession of the cocaine. Under similar circumstances in State v. Zapata, this Court held that defendant was not entitled to disclosure of the informant's identity.
In Zapata, the police arranged for a controlled delivery of heroin to Zapata through the assistance of a confidential informant, CI-1. Through video surveillance, the police observed Zapata enter a motel room with a confidential informant, CI-2, in which another informant, CI-1, was waiting. The police saw Zapata converse with CI-1, and saw Zapata empty a bag containing heroin that was already on the bed. He counted the individual packages of heroin and replaced them in the bag. Zapata then left the room with CI-2, carrying a white plastic bag. A subsequent traffic stop of CI-2's vehicle and consent to search the vehicle revealed the plastic bag containing packages of heroin. State v. Zapata, 97-1230 at pp. 2-6, 713 So.2d at 1155-1158.
Like the defendant in this case, Zapata argued that CI-1's crucial participation compelled disclosure of his identity. However, this Court countered that the informant's activities were observed by the police. Zapata, 97-1230 at p. 8, 713 So.2d at 1158. Further, the Court found that the defendant failed to "specify any concrete reasons why he needed to know the identity of the informant beyond the confidential informant's presence during the transaction." Id., 97-1230 at p. 9, 713 So.2d at 1158.
In State v. Williams, 347 So.2d 184 (La. 1977), an informant and his wife accompanied a narcotics agent to a local bar, where the informant introduced the defendant to the agent. Pretending to use their combined resources, the informant and the agent purchased heroin from the defendant. In Williams, the court found that the defendant failed to provide a reason for his request to reveal the informant's identity and failed to inform the trial judge how that information would affect his defense. Accordingly, the Williams court held that the defendant failed to establish exceptional circumstances to justify disclosure. 347 So.2d at 186-187.
In the present case, while the defendant asserts that the confidential informant was the only person who saw the cocaine before it was recovered by police, he does not specify how the confidential informant's testimony might have helped in his defense. The defendant does not argue that he was framed by the informant, or that the informant placed the cocaine in his automobile. Considering the facts that the police observed the defendant receive a package from Stokely Austin, the informant did not exchange anything with the defendant, and the cocaine was discovered in the defendant's pants during medical treatment, we cannot envision any testimony the confidential informant could have provided that would warrant revealing his identity.
Based on the foregoing, the defendant did not meet his burden of proving exceptional circumstances necessary to outweigh the public interest in protecting the informant's *882 identity. Thus, the trial judge's ruling was not an abuse of discretion.

ASSIGNMENT OF ERROR NUMBER THREE
The defendant contends that the trial judge improperly denied his mistrial motion made on the basis of mid-trial publicity. The defendant argues the trial judge should have granted the mistrial motion and should have asked the jurors whether they saw the headline that purportedly referred to the defendant's prior conviction. The State responds that the trial judge did not abuse his discretion.
On the second day of trial, the Times-Picayune newspaper published an article that referred to the defendant's 1995 conviction for a "similar charge." The article, which the defendant supplied to the trial judge, asserted that the defendant had received an eight-year sentence for "setting up an ambush of three Jefferson Parish sheriff's deputies, targeting one of them because the officer disrupted his narcotics sales. . . . Fifteen gunmen were said to open fire on the deputies in an open field in Harvey, but none was hit." The article went on to discuss the charges that were the subject of the current trial.[11]
The defendant moved for the trial judge to ask the jurors whether they had read the article and to grant a mistrial if the jurors had read the article. In denying both motions, the judge stated that he had admonished the jury not to read the newspaper. The judge pointed out there was no evidence to suggest that any of the jurors had disobeyed his admonition. The judge further stated that he was concerned the defendant would be prejudiced by an inquiry into whether or not the jury had read the article, because it would make the jurors aware that the defendant's situation was so "grave that they're doing articles about it during the course of the trial and might actually have the opposite effect of increasing prejudice. . . ."
The threshold inquiry is whether the trial court was required to ask the jury if they had read the newspaper article. In State v. Brown, 96-1002 (La.App. 5 Cir. 4/9/97), 694 So.2d 435, writ denied, 97-1310 (La.10/31/97), 703 So.2d 19, the defendant claimed the trial judge erred in denying his motion to have the jury polled about a newspaper article concerning the case, which had been published on the second day of trial. This Court found that any influence that the article might have had was nullified by the trial judge's instructions to the jury. In particular, the Brown court observed that the judge told the jury at the outset of trial to decide all questions on the evidence presented; the judge told the jury at the end of the first day of trial to remember his instructions; and the judge charged the jury to determine the facts from the evidence, and not on public opinion. Brown, 96-1002 at p. 8, 694 So.2d at 439. The Brown court stated that it could not determine any prejudicial effect, because the newspaper article had not been proffered.
In State v. Manuel, 408 So.2d 1235 (La.1982), the Louisiana Supreme Court held the trial court did not abuse its discretion in denying the motion to interrogate jurors about a television newscast that purportedly aired on the evening of the second day of trial. The newscast allegedly reported the defendants were on trial for distribution, instead of possession, of methamphetamine and had been arrested during a drug raid. The Manuel court noted the record did not reflect there was *883 actually a newscast that mentioned the trial and no showing that the newscast contained erroneous information prejudicial to the defendants. 408 So.2d at 1238. The court reasoned that the trial judge had previously instructed the jurors not to watch any newscasts or to read anything in newspaper about the trial. Id. Finally, while stating that it might have been a better approach to inquire whether any of the jurors had seen the newscast, the Manuel court found no abuse in the trial judge's discretion in denying the motion to interrogate the jurors. Id.
As in Brown and Manuel, it does not appear the judge abused his discretion in refusing to poll the jurors about the newspaper article. As in Brown, the record reflects the trial judge instructed the jury at the outset of trial to decide all questions based on the evidence. After the first day, the judge admonished the jurors not to allow any outside factors to "pollute" their thought processes, such as "anything" they might hear on the radio or see in the newspaper or television. In addition, when the judge gave the final jury instructions, he told the jurors to render a verdict on the evidence, not on public opinion.
Further, the trial judge's reasons for refusing to poll the jury reflect that he was truly concerned about prejudicing the jury by drawing attention to the newspaper article, when there was no indication any juror had read the article.
Under these circumstances, we find that the judge's instructions nullified any influence the newspaper might have had, and that the trial judge did not abuse his discretion in refusing to poll the jury.
Regarding the mistrial motion, La.C.Cr.P. art. 775 requires the trial court to grant a mistrial on the defendant's motion when "prejudicial conduct in or outside the courtroom makes it impossible for the defendant to receive a fair trial[.]" Prejudicial conduct may include pretrial or mid-trial publicity about the case. State v. Banks, 96-2227, p. 2 (La.4/18/97), 692 So.2d 1051, 1053. A mistrial is a drastic remedy generally and determination of whether prejudice has resulted is within the sound discretion of the trial judge. Id. A mistrial is not warranted unless the court determines that the jurors were actually exposed to the publicity in question and were so impressed by it as to be incapable of rendering a fair and impartial verdict. Id., 96-2227 at pp. 2-3, 692 So.2d at 1053.
In the present case, there is no evidence that the defendant was prejudiced by the newspaper article. As the trial judge noted when denying the defendant's motion for new trial on the same basis, the jury clearly was not prejudiced, since they found the defendant not guilty on three counts of attempted murder and returned a responsive verdict on one of the murder counts. Further, the jury did not make an automatic decision of guilt in this case. The record reflects that the jury deliberated for over three hours, during which time they requested the judge to re-read the definitions of first degree murder, second degree murder, manslaughter and aggravated battery.
Thus, the defendant did not sustain any prejudice by the newspaper article, and, therefore, the trial judge did not abuse his discretion by denying the mistrial motion.

ASSIGNMENT OF ERROR NUMBER FIVE
The defendant contends that that his convictions for possession of cocaine with intent to distribute and attempted first degree murder violate the constitutional guarantees against double jeopardy. In particular, the defendant contends that double jeopardy prohibits conviction for attempted first degree murder and the *884 underlying felony, which, in this case, was possession of cocaine with intent to distribute. The State responds that the defendant is precluded from raising this challenge because he failed to file a motion to quash and that, in any event, the claim has no merit.
Although double jeopardy is most properly raised in a motion to quash in the district court, double jeopardy can be raised at any time, but only once. State v. Gordon, 00-1013, p. 28 (La.App. 5 Cir. 11/27/01), 803 So.2d 131, 150, writs denied, 02-0362 (La.12/19/02), 833 So.2d 336, 02-0209 (La.2/14/03), 836 So.2d 134. While the defendant failed to file a motion to quash, this is the first time he has raised the issue. Thus, the issue is properly before this Court on appeal. See, Gordon, supra.
Double jeopardy provisions protect an accused not only from a second prosecution for the same offense, but also multiple punishments for the same criminal act. State v. Barton, 02-163, p. 17 (La.App. 5 Cir. 9/30/03), 857 So.2d 1189, 1201, writ denied, 03-3012 (La.2/20/04), 866 So.2d 817. When proof of a felony is an essential element of an attempted first degree murder, double jeopardy precludes conviction and punishment of the defendant for both attempted murder and the underlying felony. See, State v. Pittman, 95-382, p. 32 (La.App. 5 Cir. 10/1/96), 683 So.2d 748, 765. However, an accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense without violating the principle of double jeopardy. State v. Jackson, 99-1256, p. 8 (La.App. 5 Cir. 7/25/00), 767 So.2d 848, 853, writ denied, 00-2528 (La.10/5/01), 798 So.2d 960.
The bill of information charged the defendant with six counts of attempted first degree murder of police officers, and one count of possession of cocaine with intent to distribute. The State did not specify the subsection of La.R.S. 14:30 with which it intended to proceed in the bill of information, and the trial judge charged the jury on subsections La.R.S. 14:30(A)(2), (3), and (6). These subsections define first degree murder as follows in pertinent part:
(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman, peace officer, or civilian employee of the Louisiana State Police Crime Laboratory or any other forensic laboratory engaged in the performance of his lawful duties, or when the specific intent to kill or to inflict great bodily harm is directly related to the victim's status as a fireman, peace officer, or civilian employee.
(3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person.
* * *
(6) When the offender has the specific intent to kill or to inflict great bodily harm while engaged in the distribution, exchange, sale, or purchase, or any attempt thereof, of a controlled dangerous substance listed in Schedules I, II, III, IV, or V of the Uniform Controlled Dangerous Substances Law.
The jury was not polled on the particular subsection it used to convict the defendant of attempted first degree murder. However, the attempted murder convictions can be upheld if there is sufficient evidence based on any of the alternative theories with which the jury was charged. See, State v. Brown, 96-1002 at p. 4, 694 So.2d at 437.
In this case, the evidence was sufficient to prove that the defendant committed attempted first degree murder by *885 specifically intending to kill police officers under La.R.S. 14:30(A)(2).[12]
Because the State proved the attempted first degree murder convictions under La.R.S. 14:30(A)(2) as specific intent crimes, proof of possession of cocaine with intent to distribute was not an essential element. Accordingly, convictions for both crimes do not violate the prohibitions against double jeopardy.

ERROR PATENT DISCUSSION
The trial court failed to order that the defendant serve the first two years of his sentence for possession of cocaine with intent to distribute without benefit of parole, probation, or suspension of sentence, as required by La.R.S. 40:967(A). No corrective action is necessary, however, because under La.R.S. 15:301.1 the sentence is deemed to contain that restriction. State v. Johnson, 03-903, p. 13 (La.App. 5 Cir. 12/9/03), 864 So.2d 645, 654.

DECREE
For the foregoing reasons, the convictions are affirmed.
AFFIRMED.
NOTES
[1] The alleged victims of the six attempted murder charges were as follows: count one, Detective Daniel Jewell, Jr., Jefferson Parish Sheriff's Office (JPSO); count two, Detective Michael Pizzolato, JPSO; count three, Trooper Anita Bergeron, Louisiana State Police (LSP); count four, Sergeant Michael C. "Chris" Baron, LSP; count five, Detective Eric Davies, JPSO; count six, Trooper Derrick Stewart, LSP.
[2] The State severed count seven and dismissed that count after sentencing.
[3] The State's exhibits in the habitual offender proceeding established that the defendant pleaded guilty to three counts of attempted murder of a police officer.
[4] The appellate record does not include the transcript of the habitual offender proceeding. However, the defendant has not raised any issues relating to the habitual offender sentence on appeal.
[5] The defendant was found not guilty of the charges involving Troopers Bergeron, Baron, and Stewart. Trooper Bergeron testified that she could not see the defendant's reflection in the rear-view mirror because of his tinted windows. She further stated that the Yukon initially accelerated as it backed up, but moved slowly, at idle speed, until it struck the rear corner of the undercover vehicle. Trooper Bergeron admitted that the undercover vehicle suffered very little damage.
[6] Trooper Stewart testified that the vehicle proceeded toward him after swerving, but he ultimately took cover behind a lamp post.
[7] Jones was charged with attempted first degree murder of a peace officer, but the jury returned the responsive verdict of attempted second degree murder.
[8] Amos was charged with attempted first degree murder of a police officer. The jury found him guilty of attempted manslaughter, which also requires a specific intent to kill. State v. Amos, 550 So.2d at 276.
[9] Although Detective Davis testified he could see "Mr. Stokely" ducking, it is clear he was referring to the defendant, not to Stokely Austin.
[10] The defendant asserted that the two motions were interrelated, and the trial court ruled that the parties could ask Trooper Ayo questions pertaining to both motions at the hearing.
[11] The article is attached to the defendant's motion for new trial, filed on the same basis. However, the defendant does not challenge the trial court's denial of the new trial motion in this appeal.
[12] We distinguish State v. Holmes, 94-907 (La.App. 5 Cir. 3/15/95), 653 So.2d 642, the case cited by the defendant in his brief. In Holmes, the only way the State could have convicted Holmes for attempted first degree murder was to rely on the underlying armed robbery, for which he was also convicted.