MARC E. JOHNSON, Judge.
12Pefendant, Danny Alsay, appeals his convictions for two counts of aggravated battery on the basis the evidence was insufficient to support the convictions. For the reasons that follow, we affirm.
Defendant was charged in a bill of information on August 6, 2008 with two counts of attempted first degree murder of D.O., a juvenile, and Kendra,[1] in violation of La. R.S. 14:27 and 14:30.[2] The State subsequently amended count two of the bill of information on August 19, 2009 to charge defendant with attempted second degree murder of Kendra in violation of La. R.S. 14:27 and 14:30.1. Defendant proceeded to trial on August 19, 2009 before a 12-per-son jury. The jury found defendant guilty of the responsive verdict of aggravated battery on both counts. The trial court sentenced defendant to ten years at hard labor on each |scount and ordered the sentences to run concurrently. The State subsequently filed a multiple offender bill of information, but later dismissed it. Defendant filed this appeal challenging his convictions for aggravated battery.

Facts

At approximately 10:10 a.m. on June 13, 2008, Deputy Roy Broadrick and Detective James Compton, both with the Gretna Police Department, responded to a 911 open line call with a disturbance or argument in the background. Detective Compton knocked on the front door of the residence, but no one answered. Shortly thereafter, Kendra came out of the side door of the house visibly upset and afraid screaming “he’s got a gun.” Defendant then exited the same door, threw a silver pistol down, and went back inside. Defendant then came out the front door with his hands up and was handcuffed.
Kendra advised the officers that defendant, her ex-boyfriend, was trying to kill her and their three and one-half-year-old son, D.O. She stated defendant shot at her in a bedroom and shot at D.O. in *147 another bedroom after covering him with a comforter. Deputy Broadrick observed a hole in the comforter and the mattress in the master bedroom and a hole in the mattress in defendant’s bedroom. A shell casing was subsequently recovered from the floor next to the dresser in the master bedroom, and a spent shell casing was found inside the mattress. Additionally, in defendant’s bedroom, one spent shell casing was found on the bed’s comforter, and a second shell casing was found under the bed. A projectile, or bullet, was found lodged under the bed in the floor under the carpet, and a second projectile was recovered from the paneling on the wall behind defendant’s bed. The gun discarded by defendant matched the casings and projectiles found in the two bedrooms.
| ^Kendra also advised the officers that defendant brought her into the bathroom and tried to place a shower curtain over her head while stating he was going to kill her. Another police officer went into the bathroom and observed water running in the tub. Deputy Broadrick then arrested defendant for the attempted murder of Kendra and D.O.
At trial, Kendra testified she and D.O. spent the night at defendant’s house with his parents on June 12, 2008. Defendant’s parents were gone the next morning when defendant grabbed Kendra’s cell phone and looked through her phone numbers. Upon seeing phone numbers he did not recognize, defendant “started going crazy.” Kendra stated defendant started to choke her and cuss at her stating, “B* * * *, you better not be playing with no n* * * * *, why is n* * * * *s calling your phone.” The two began to argue when defendant stuck his Angers in Kendra’s mouth, scratched her gums, and retrieved a silver handgun from under his bed.
Defendant pointed the gun at Kendra’s head and said he was going to kill her. Kendra attempted to grab the gun and it discharged towards her face, which prompted defendant to state, “b* * * *, why you move your head, I wanted to shoot you.” Kendra testified she began begging for her life when defendant attempted to choke her on the bed, firing another shot. Defendant then pointed the gun at her head and forced her into the bathroom while repeatedly threatening to kill her. In the bathroom, Kendra continued pleading for her life as defendant made her sit on the edge of the bathtub as he ran the bath water. Kendra stated defendant kept pulling the shower curtain in front of her face and saying “b* * * *, you won’t see it coming.”
Kendra asked if she could see her son one last time. Agreeing to her request, defendant pushed Kendra into the master bedroom where D.O. was watching | .^cartoons. While Kendra was hugging D.O., defendant grabbed D.O. and said “who do you want to see go first, you or him.” Defendant then pulled the covers over D.O. and fired the gun towards his head. After the shot missed D.O., defendant stated, “how the f* * * I missed this little n* * * Kendra unsuccessfully attempted to wrestle the gun away from defendant, who then pushed her out of the master bedroom and into his bedroom repeating his desire to kill her.
Once back in defendant’s bedroom, Kendra’s uncle and friend of defendant’s parents, knocked on the front door. Prior to answering the door, defendant threatened to kill Kendra and her uncle if she did not get back into the bedroom. While defendant answered the door, Kendra snuck into the kitchen, dialed 911, threw the phone down, and went back into the bedroom so defendant would not catch her. Shortly thereafter, the police arrived at the house. As defendant looked out the window at the police, Kendra ran out of *148 the side door yelling that defendant had a gun and was trying to kill her and her son.
Defendant did not testify at trial. However, in a statement given to police after his arrest and after waiving his rights, defendant stated he and Kendra argued over a phone call he had received from a female. According to defendant, Kendra said she was going to have “the dudes” kill him. Defendant further stated he went into the master bedroom and lay down next to his son when Kendra came in with a gun. The two fought over the gun and a shot was fired. When questioned about the firing of the gun, defendant requested an attorney at which time his statement ended.

Sufficiency of the Evidence

In defendant’s sole assignment of error, he challenges the sufficiency of the evidence to convict him of aggravated battery. Defendant asserts that attempted murder and | (¡aggravated battery do not encompass the same elements, i.e., aggravated battery requires the use of force of violence upon the victim and the use of a dangerous weapon whereas attempted murder does not. He contends he could not have been convicted of aggravated battery where no evidence was presented to indicate that either victim was actually struck by a bullet, or subjected to any battery by the use of a deadly weapon. Recognizing he failed to object to the inclusion of aggravated battery as a responsive verdict, defendant further argues there was no evidence of specific intent to kill and, thus, an essential element of attempted murder is absent. Defendant maintains the evidence only shows he intended to frighten the victims, not kill them.
The constitutional standard for testing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).
In the instant case, defendant was charged with one count of attempted first degree murder and one count of attempted second degree murder and was convicted of two counts of aggravated battery. Under La.C.Cr.P. art. 814(A)(2) and (4), aggravated battery is a legislatively authorized responsive verdict to attempted first and second degree murder. The Louisiana Supreme Court has acknowledged that an essential element of aggravated battery, the lesser crime, is not an essential element of the greater crime, attempted murder. State ex rel. Elaire v. Blackburn, 424 So.2d 246, 251-252 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983). Specifically, attempted murder does not require the use of force or violence upon the person of the victim and it does not require the use of a dangerous weapon. Thus, the evidence adduced to support the greater offense does not automatically prove the lesser. Id. at 249.
| ^Defendant argues the evidence was insufficient to support the jury verdicts of two counts of aggravated battery. The record reflects that defendant never objected to the inclusion of aggravated battery as a responsive offense. It is well established that a defendant may not complain if the jury returns a legislatively approved responsive verdict, even where there is insufficient evidence to support such a verdict, provided the evidence is sufficient to support the charged offense. Blackburn, 424 So.2d at 252; State v. Austin, 04-993 (La.App. 5 Cir. 3/1/05), 900 So.2d 867, 878, writ denied, 05-830 (La.11/28/05), 916 So.2d 143. In Blackb *149 urn, 424 So.2d at 251-52, the supreme court explained:
It would be unfair to permit the defendant to have the advantage of the possibility that a lesser “compromise” verdict will be returned (as opposed to being convicted of the offense charged) and then to raise the complaint for the first time on appeal, that the evidence did not support the responsive verdict to which he failed to object.
Accordingly, defendant is entitled to a reversal of his conviction only if the evidence is insufficient under the Jackson standard to support a conviction of the charged offenses, attempted first and attempted second degree murder, regardless of whether the responsive verdict is supported by the evidence. Austin, supra.
First degree murder is the “killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm upon a victim under the age of twelve years.” La. R.S. 14:30(A)(5). Second degree murder is the killing of a human being when the offender has specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1. Attempt is defined as “Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended.” La. R.S. 14:27(A).
|sThe crime of attempted murder, whether first or second degree, requires proof of the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Cepriano, 00-213 (La.App. 5 Cir. 8/29/00), 767 So.2d 893, 897. Specific intent is “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). Because specific intent is a state of mind, it need not be proven as a fact, but may be inferred from the circumstances and actions of the accused. State v. Lewis, 97-160 (La.App. 5 Cir. 7/29/97), 698 So.2d 456, 459, writ denied, 97-2381 (La.3/27/98), 716 So.2d 881.
In the present case, the record demonstrates the evidence was sufficient to convict defendant of the charged offenses of attempted first degree murder of D.O. and attempted second degree murder of Kendra. Although defendant argues that specific intent is lacking because defendant had the opportunity for a contact shot but disregarded it, it is well established that specific intent may be inferred from the act of pointing a gun and firing at a person. See State v. Noble, 425 So.2d 734, 736 (La.1983); State v. Templet, 05-2623 (La.App. 1 Cir. 8/16/06), 943 So.2d 412, 422, writ denied, 06-2203 (La.4/20/07), 954 So.2d 158; State v. Butler, 37,226 (La.App. 2 Cir. 6/25/03), 850 So.2d 932; State v. Slang, 94-332 (La.App. 5 Cir. 11/16/94), 646 So.2d 1037, writ denied, 94-3063 (La.4/7/95), 652 So.2d 1344.
Here, the evidence showed that defendant pointed and shot the gun at both Kendra and D.O., and verbalized his desire to kill them. Specifically, Kendra testified that defendant retrieved a gun from underneath his bed, pointed it at her head, and stated that he was going to kill her. When the gun discharged, defendant wanted to know why Kendra had moved because he “wanted to shoot [her.]” J^Kendra stated defendant fired another shot while attempting to choke her on the bed. With regard to D.O., the evidence showed defendant covered his son with a comforter, pointed the gun towards the child’s head, and fired the weapon. Upon missing, the defendant wanted to know how he missed.
*150 The physical evidence at the scene substantiated Kendra’s version of the events. In particular, in defendant’s bedroom, one bullet was located in the floor beneath the bed and one bullet was found in the wall near the headboard of the bed. In the master bedroom, a shell casing was found next to the dresser and a spent casing was found inside the mattress.
We find this evidence is sufficient to establish specific intent. In viewing the evidence in the light most favorable to the State, we find the evidence sufficient to support a conviction for the charged offenses, attempted first degree murder and attempted second degree murder. Thus, defendant is not entitled to a reversal of his convictions for the responsive verdicts of aggravated battery, to which he did not object.
We have reviewed the record for errors patent pursuant to La.C.Cr.P. art. 920 and find no errors that require corrective action.

Decree

Defendant’s convictions and sentences for two counts of aggravated battery are affirmed.

CONVICTIONS AND SENTENCES AFFIRMED

. Kendra’s full name is not referenced in this opinion to protect the identity and to provide for the safety and welfare of her juvenile son, D.O., who is the victim in count one and whose initials will be used in this opinion under the authority of La. R.S. 46:1844.

. Defendant was also charged with one count of possession of a firearm by a felon (count three) in violation of La. R.S. 14:95.1. Defendant proceeded to trial solely on the two murder charges (counts one and two) and was convicted. Thereafter, count three was amended to attempted possession of a firearm by a felon on February 1, 2010. On the same day, defendant pled guilty to the amended charge and was sentenced to seven years at hard labor. Defendant’s conviction and sentence for attempted possession of a firearm by a felon are not challenged in this appeal.