# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-853

STATE OF LOUISIANA

VERSUS

BRYANT LAKEITH BETHLEY

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 11-1358
HONORABLE KATHY A. JOHNSON, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and
Marc T. Amy, Judges.

**AFFIRMED.**

Bradley R. Burget
District Attorney - Concordia Parish
Ann Sheridan Siddall
Assistant District Attorney – Concordia Parish
P. O. Box 1154
4001 Carter Street – Suite 9
Vidalia, LA 71373
Telephone:  (318) 336-5526
COUNSEL FOR:
     Plaintiff/Appellee - State of Louisiana

Beth Smith Fontenot
Louisiana Appellate Project
P. O. Box 3183
Lake Charles, LA 70602
Telephone:  (337) 491-3864
COUNSEL FOR:
     Defendant/Appellant - Bryant Lakeith Bethley

**THIBODEAUX, Chief Judge.**

Defendant, Bryan Lakeith Bethley, appeals his conviction and sentences for three counts of attempted second degree murder. He was sentenced to twenty-five years at hard labor, without benefit of probation, parole, or suspension of sentence on counts one and three and to forty years at hard labor, without benefit of probation, parole, or suspension of sentence on count two. These sentences were consecutive to each other and consecutive to his mandatory life sentence for his conviction of second degree murder arising out of the same incident.[1] We affirm.

## I.

## ISSUES

We must decide:

(1)     whether the evidence presented at trial was sufficient to convict Defendant;

(2)     whether the trial court committed reversible error by failing to hold a hearing outside the jury's presence as to the voluntariness of an inculpatory statement Defendant made to police;

(3)     whether the trial court erred by trying Defendant and his co-defendant together; and

(4)     whether the trial court erred by ordering Defendant's sentences to run consecutively.

## II.

## FACTS

On the night of April 3, 2010, officers responded to a shooting at 803 Alabama Street in Ferriday, Louisiana. Reginald Green was parked in front of the residence with three passengers in his vehicle, Myecha Leonard, Kenneth Leonard, and Kevin Carter. A second vehicle in which Defendant was a passenger pulled up

---

[1]Docket number 12-844, which is also before this court.

behind Green. Armed with an AR-15 rifle, Defendant got out, approached Green's vehicle, and fired several shots into the vehicle. Green was killed, two passengers escaped unharmed, and one passenger was grazed by a bullet. Before leaving the scene, the Defendant held a gun to Kenneth Leonard's head but did not fire the weapon. He then returned to his vehicle and fled the scene. An eyewitness later identified Defendant as the shooter. Defendant was convicted on three counts of attempted second degree murder. He appeals his convictions and consecutive sentences.

III.

## LAW AND DISCUSSION

### *Standard of Review*

The standard of review for a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *State v. Mussall*, 523 So.2d 1305 (La.1988). An appellate court does not re-weigh the evidence or assess the credibility of witnesses. *Mussall*, 523 So.2d 1305. Determining the weight of the evidence is a question of fact, reserved for the fact-finder, and we will only infringe on that function to the extent necessary to meet the *Jackson* standard. *State v. Silman*, 95-0154 (La. 11/27/95), 663 So.2d 27.

### *Discussion*

*Insufficient Evidence*

Defendant argues that he was mistakenly identified and the evidence was insufficient to convict him because the only direct evidence that he was the shooter came from the testimony of one eyewitness, Martika Robinson. Defendant contends this is insufficient because it was dark at the crime scene, and no one corroborated her

2

testimony. Defendant also maintains that the evidence was insufficient to prove that the shooter specifically intended to kill Myecha Leonard, Kenneth Leonard, and Kevin Carter.

## Identity of the shooter

Defendant asserts first that the evidence was insufficient to prove that he was the shooter. "When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime." *State v. Hearold*, 603 So.2d 731, 734 (La.1992). The elements of attempted second degree murder are "a specific intent to kill the victim and the commission of an overt act that tends toward the accomplishment of the victim's death." La.R.S. 14:30.1; La.R.S. 14:27; *State v. George*, 09-143, pp. 4-5 (La.App. 3 Cir. 10/7/09), 19 So.3d 614, 618. Since Defendant challenges his identity as the perpetrator, the State was "required to negate any reasonable probability of misidentification." *George*, 19 So.3d at 618; *State v. Hughes*, 05-992, p. 5 (La. 11/29/06), 943 So.2d 1047, 1051. One witness's positive identification "is sufficient to support a conviction." *Id.*

Martika Robinson was the only eyewitness who identified Defendant as the shooter. At the time of the offense, Martika was living at 803 Alabama Street. She was at home on the evening of the offense and saw Green with Myecha Leonard, Kenneth Leonard, and Kevin Carter, parked outside in a Chevy Blazer. Martika spoke to Kevin, who was seated behind Green, for several minutes before she headed back to the residence. As she walked away from Green's vehicle, she saw Defendant in a light brown, two-door Buick with large rims. Defendant was a passenger, and Martika did not see the driver. Martika testified that as Defendant exited the vehicle, he fired a gun into the Blazer, aiming at the passenger side of the car by the front window. Martika stated there was nothing blocking her view of the Blazer or

Defendant as he exited his vehicle. After Defendant left the scene, Martika called 911 and reported that Green had been killed. Martika identified Defendant in open court. At trial, when asked if it was dark that night, Martika replied, "we had a little light." She explained that the light was coming from "way across the street." When asked if the pine trees made the yard dark, Martika stated, "not really."

Martika's testimony identifying Defendant as the shooter was buttressed by other evidence. Earlier on the day of the shooting, Defendant was involved in a dispute with Green over money Defendant allegedly stole from Green's sister, Genesia. After the argument, and a short time before the shooting, Defendant called Genesia and asked about Green's whereabouts, to which she did not respond.

Kenneth's testimony similarly implicated Defendant. After Green parked on the night of the offense, Kenneth heard a gunshot and ducked down on the floor of the vehicle. More gunshots were fired from the passenger side of the vehicle. Kenneth was able to leave the car and crawl to the side of another vehicle parked in front of the residence. After firing shots into the car, Defendant came up behind Kenneth and tapped him on the back of the head with the barrel of the gun. Kenneth turned around and saw Defendant with the gun and thought Defendant was trying to kill him. Kenneth then saw Defendant leave without firing any more shots.

Additional facts during and after the offense were elucidated at trial which implicated Defendant's involvement. For instance, the vehicle possibly involved in the offense belonged to Defendant's cousin, Lamar Butler. Martika Robinson gave Chief Dennis Cowan a description of the suspect's vehicle, which was typically driven by Lamar Butler and his family.

Other testimony indicated Defendant and/or his first cousin, Reginald Butler, purchased the murder weapon from a friend and that the weapon was disposed of after the offense. The murder weapon, an AR-15 rifle, was recovered from Black Bayou. Thirteen shell casings recovered from the crime scene matched the rifle

4

recovered from the bayou. A search of the car Defendant typically drove uncovered a twenty count box of 223-caliber Remington bullets, the ammunition used in AR-15 rifles. Eleven more live rounds of the same bullets were recovered on the corner of Earl Davis and Doty Roads, near where Lamar's vehicle was found.

During Chief Cowan's interview with Defendant after he was arrested, Defendant asked him if Green was really dead. Chief Cowan confirmed that Green had died and in response, Defendant responded, "good, he deserved to die."

This case involves a matter of credibility for the jury to decide. Under the jurisprudence, it is not this court's role to second-guess the jury's assessment. "Credibility assessments are within the province of the fact-finder, in this case the jury." *State v. Hypolite*, 04-1658, p. 5 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, 1279, *writ denied*, 06-618 (La. 9/22/06), 937 So.2d 381. A jury may "accept or reject, in whole or in part," any witness's testimony. *Id.* (citing *State v. Silman*, 95-154, p. 12 (La. 11/27/95), 663 So.2d 27, 28). We will "overturn a jury's credibility assessment only when a witness's own testimony demonstrates that the witness's ability to perceive events was impaired in some way." *Hypolite*, 903 So.2d at 1279.

The jury clearly believed Martika Robinson's testimony that Defendant was the shooter, even though the offense occurred at night and in a poorly lit area. Although no other witnesses testified to actually seeing Defendant shoot Green, the State negated any reasonable probability of misidentification with the circumstantial evidence adduced at trial. The evidence indicated there was a dispute between Defendant and Green earlier on the day of the offense, Defendant participated in the purchase of the weapon used in the offense, and he was seen with the gun in his hand after the shooting. Additionally, the forensic evidence recovered from the crime scene, and from the car Defendant typically drove, was connected to the weapon found in the bayou. Accordingly, the jury's credibility determination was not clearly contrary to the evidence.

5

## Specific Intent

To prove attempted murder, the State had to show proof of the "specific intent to kill the victim and the commission of an overt act that tends toward the accomplishment of the victim's death." *George*, 19 So.3d at 618; La.R.S. 14:27. Specific intent "is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act." La.R.S. 14:10(1); *State v. Daniels*, 109 So.2d 896, 899 (La.1959). Further, "[b]ecause specific intent is a state of mind, it need not be proven as a fact, but may be inferred from the circumstances and actions of the accused." *State v. Alsay*, 11-562, p. 8 (La.App. 5 Cir. 12/13/11), 81 So.3d 145, 149, *writ denied*, 12-1041 (La. 9/21/12), 98 So.3d 335; *see also State v. Tyler*, 11-1256 (La.App. 3 Cir. 5/2/12), 93 So.3d 670.

Viewing the evidence in the light most favorable to the prosecution, the State adequately proved that Defendant possessed the specific intent to kill. Although the initial conflict arose between Defendant and Green, specific intent to kill may be inferred from Defendant's actions prior to, during, and after the shooting. Following the dispute with Green, Defendant purchased an AR-15 and waited down the street a short distance away from the scene for Green to arrive. Similarly, Kenneth testified that he saw Defendant with a gun when Defendant approached him and tapped his head with the barrel of the gun. Kenneth feared for his life. The fact that Myecha, Kenneth, and Kevin were not seriously injured does not negate specific intent to kill. Defendant showed no regard for the victims as he riddled Green's vehicle with bullets, mortally wounding Green and grazing Kevin.

In *State v. Thomas*, 10-269, p. 7 (La.App. 3 Cir. 10/6/10), 48 So.3d 1210, 1215, *writ denied*, 10-2527 (La. 4/1/11), 60 So.3d 1248, *cert. denied*, ___ U.S. ___, 132 S.Ct. 196 (2011), this court held that evidence showing that a defendant fired a gun at someone multiple times is sufficient to support a conviction for attempted

second degree murder.  We noted that "[i]t is well-settled that the act of pointing a gun at a person and firing the gun is an indication of the intent to kill that person." *Id.*

Likewise, in this case, the simple act of pointing a gun at Green's vehicle and firing numerous shots at the occupants in the vehicle shows specific intent to kill. A rational trier of fact could, therefore, conclude that Defendant had specific intent to kill Myecha Leonard, Kevin Carter, and Kenneth Leonard.  Accordingly, this assignment of error is without merit.

*Hearing Concerning Voluntariness of Defendant's Statement*

Defendant argues that the trial court committed reversible error by failing to hold a hearing outside the jury's presence as to the voluntariness of an inculpatory statement made by Defendant to police.  Defendant contends that this led to the erroneous admission of an incriminating statement.

"Before an inculpatory statement can be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises."  *State v. Thomason*, 353 So.2d 235, 238 (La.1977); La.R.S. 15:451; La.Code Crim.P. art. 703(C).  The State argues that Defendant's statement was exculpatory, not inculpatory, because he stated he had not been in Ferriday, Louisiana at any time on the day of the shooting.  The State asserts that a hearing outside the presence of the jury was, therefore, not required.  In support of its contention, the State refers to this court's decision in *State v. Laws*, 95-593 (La.App. 3 Cir. 12/6/95), 666 So.2d 1118, *writ denied*, 96-89 (La. 9/13/96), 679 So.2d 102.  In *Laws*, the defendant argued that that the trial court improperly allowed the State to introduce his statement without first conducting a hearing pursuant to La.R.S. 15:451 to determine if his statement was given freely and voluntarily.  This court found no merit in the defendant's argument and reasoned that the defendant's statement was not a

7

confession because "he neither admitted guilt nor admitted facts that showed the existence of criminal intent." *Id.* at 1122.

After Defendant was arrested, he signed an advice of rights form, which was introduced into evidence at trial over his objection. In his statement to police, Defendant stated that he was in Clayton, Louisiana on the day of the offense and was not in Ferriday. Defendant also stated that it was good that Green was dead and that he deserved to die. Although Defendant did not admit to his guilt in his statement, the State argued and the trial court agreed that the statement showed Defendant's intent to kill. As such, pursuant to *Laws*, Defendant's statement is governed by the rules applicable to confessions. 666 So.2d 1118. Accordingly, the State had the burden of affirmatively showing that Defendant's statement was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La.R.S. 15:451.

The State showed, by the waiver of rights form Defendant signed and by testimonial evidence, Defendant's statement was not made as a result of threats, force, violence, offers, promises, or inducements. Defendant did not suggest or offer any proof that his statement was not free and voluntary during the bench conferences at trial or on appeal. As such, the alleged error was harmless in light of the evidence presented at trial of Defendant's guilt. *State v. Tart*, 93-772 (La. 2/9/96), 672 So.2d 116, *cert. denied*, 519 U.S. 934, 117 S.Ct. 310 (1996). Accordingly, this assignment of error is without merit.

*Joint Trial*

Defendant asserts that the trial court erred in allowing the State to try Defendant and co-defendant, Daniel Butler, together when they were charged by separate indictments. Louisiana Code of Criminal Procedure Article 706 governs consolidated trials and states that "[u]pon motion of a defendant . . . the court may

order two or more indictments consolidated for trial if the offenses and the defendants . . . could have been joined in a single indictment." Defendant also contends that to consolidate the cases for trial, the State should have charged both defendants in the same charging instrument, meeting the joinder requirements of La.Code Crim.P. art. 494, which states that "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Finally, Defendant maintains he was prejudiced by the consolidation when Daniel Butler pled guilty after the trial had begun.

The State asserts that it follows the same procedure of charging individual defendants on separate indictments in all cases, because the case tracking software utilized by the Clerk of Court in the Seventh Judicial District Court does not recognize or permit multiple defendants appearing on the same indictment or permit the filing of multiple counts of different crimes. The software will permit and track multiple counts of the same crime on a single indictment but not multiple defendants. The State, therefore, was allowed to charge the defendants in separate indictments.

The State also contends that notice was given to Defendant six months before trial began, during which time the Defendant should have filed a writ application seeking a reversal of the trial court's ruling. Additionally, the State refers to *State v. Crochet*, 05-123 (La. 6/23/06), 931 So.2d 1083, wherein the supreme court's per curiam decision addressed whether prejudice resulted from the consolidation of cases. Factors to consider include "whether the jury would be confused by the various charges; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature

9

of the charges, the charging of several crimes would make the jury hostile." *Id.* at 1087 (citing *State v. Washington*, 386 So.2d 1368, 1371 (La.1980)).

When the State announced its intent to consolidate the cases of Defendant and Daniel Butler for trial, it maintained that a consolidated trial would be more efficient, and that there was no conflict because the defendants were not pointing the finger at each other and neither had given a statement. Additionally, the State asserted that the same facts and circumstances were involved in both cases. Over Defendant's objection, the trial court ordered that Defendant and Daniel Butler's cases be tried together.

After trial had commenced, Daniel Butler entered a plea of guilty to obstruction of justice in exchange for the dismissal of his other charges. The following day, Defendant's counsel moved for a mistrial, citing prejudice to Defendant as a result of his co-defendant's guilty plea. Defense counsel argued that the guilty plea, after testimony had been given in front of the jury, would force counsel to change his defense in the middle of trial, limiting his effectiveness. The State asserted that it was appropriate procedure to dismiss charges against a co-defendant up until the jury returns the verdict and that the co-defendant had the right to plead guilty at any time. The State further asserted that it had not yet presented its case against Butler and that Defendant would not be prejudiced or limited in his defense. The court denied Defendant's motion for mistrial. The day after Butler pleaded guilty, the trial judge informed the jury that Butler and his attorney would no longer be present in the courtroom for reasons that the court could not divulge. The court instructed the jury not to draw any conclusions or inferences from Butler's absence and to concern themselves only with Defendant's guilt or innocence.

Although Defendant correctly asserts that neither defendant moved to have the cases consolidated as required, the cases still met the joinder requirements. La.Code Crim.P. art. 706; La.Code Crim.P. art. 494. Both defendants were alleged to

have participated in the same act or series of acts constituting the offense; thus, they could have been properly charged in a single charging instrument.

Similarly, although the dismissal of co-defendant Daniel Butler after trial had commenced may have caused the jury some confusion, the trial court limited any prejudice to Defendant by instructing the jury not to draw any conclusions or inferences from the absence of the co-defendant. The trial court also stressed that the charges against Defendant were the only charges before the jury for its consideration. The remaining factors set forth in *Washington* are not relevant to the instant case. Under these circumstances, the consolidation of the cases does not appear to have unfairly prejudiced Defendant; thus, this assignment of error is without merit.

*Consecutive Sentences*

Defendant argues that the trial court erred in ordering consecutive sentences, instead of concurrent ones, when the offenses arose from the same act or transaction. Defendant asserts also that the trial court erroneously failed to articulate any reasons for imposing consecutive sentences.

Concurrent sentences are preferred when offenses arise out of a common scheme or plan. A trial court is given the discretion, however, to impose consecutive sentences in such cases. Louisiana Code of Criminal Procedure Article 883 states that "[i]f the defendant is convicted of two or more offenses . . . constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively." The imposition of consecutive sentences, however, requires particular justification beyond the standard sentencing guidelines, justification which must be articulated by the trial court at sentencing. *State v. Compton*, 11-68 (La.App. 3 Cir. 6/1/11), 66 So.3d 619, *writ denied*, 11-1362 (La. 12/2/11), 76 So.3d 1177. "The factors to consider when imposing consecutive sentences include defendant's criminal record, the severity or

11

violent nature of the offenses, or the danger the defendant poses to the public." *State v. Wallace*, 11-1258, p. 14 (La.App. 3 Cir. 5/30/12), 92 So.3d 592, 602.

After imposing the mandatory life sentence for Defendant's second degree murder conviction, the trial court noted Defendant's prior criminal history and other aggravating factors and concluded that Defendant was a violent individual. The court also found that there is an undue risk that Defendant would commit another crime if given a suspended sentence or probation, and that he is in need of correctional treatment best achieved by commitment to an institution. Similarly, the court found that a lesser sentence would deprecate the seriousness of the crime. The court noted Defendant's lack of remorse as another reason for consecutive sentences.

Consequently, the trial court articulated particular justification beyond the standard sentencing guidelines when it imposed consecutive sentences. Considering the circumstances surrounding the offenses, the violent nature of the offenses, and Defendant's lack of remorse, the trial court's imposition of consecutive sentences is supported by the record. Accordingly, this assignment of error is without merit.

IV.

## CONCLUSION

For the reasons above, we affirm Defendant's convictions and sentences.

**AFFIRMED.**