STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 19-881


STATE OF LOUISIANA

VERSUS

THOMAS CALVIN HENSON, JR.


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 13071-17
HONORABLE ROBERT LANE WYATT, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**CONVICTIONS AFFIRMED; SENTENCES FOR THEFT AND POSSESSION OF A FIREARM BY A CONVICTED FELON AFFIRMED; CONVICTIONS FOR AGGRAVATED BURGLARY AND HOME INVASION REVERSED AND REMANDED FOR RESENTENCING.**

**John Foster DeRosier**
**Fourteenth Judicial District Court District Attorney**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Elizabeth Brooks Hollins**
**Assistant District Attorney**
**901 Lakeshore Drive Ste 800**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Meghan Harwell Bitoun**
**639 No. Alexander St.**
**New Orleans, LA 70119**
**(504) 470-4779**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Thomas Calvin Henson, Jr.**

**Thomas Calvin Henson, Jr.**
**Dixon Correctional Institute Unit 1/D. E**
**P.O. Box 788**
**Jackson, LA 70748**

**EZELL, Judge.**

On July 12, 2017, Defendant, Thomas Calvin Henson, Jr., was charged by bill of information with theft between $750 and $5,000, in violation of La.R.S. 14:67(B)(3); theft of a firearm, in violation of La.R.S. 14:67.15; cruelty to the infirmed, in violation of La.R.S. 14:93.3; and false imprisonment with a dangerous weapon, in violation of La.R.S. 14:46.1. Two codefendants, Lea Diane Pence and Michael Nelson Helmer, were also charged with the same offenses; additionally, Ms. Pence was charged with home invasion where a person under twelve years of age or a person sixty-five years of age or older is present, in violation of La.R.S. 14:62.8(B)(3).[1] On October 23, 2018, an amended bill of information was filed charging Defendant with theft between $750 and $5,000, in violation of La.R.S. 14:67(B)(3); home invasion where a person under twelve years of age or a person sixty-five years of age or older is present, in violation of La.R.S. 14:62.8(B)(3); aggravated burglary, in violation of La.R.S. 14:60; and possession of a weapon by a convicted felon, in violation of La.R.S. 14:95.1. Michael Helmer was dropped from the bill of information, and the charges against Ms. Pence remained the same from the prior bill of information.

On November 13, 2018, voir dire began for Defendant's trial on all four charges arising out of the amended bill of information. Following trial, Defendant was found guilty as charged on all four counts. On January 8, 2019, Defendant filed a "Motion to Set a New Trial," claiming his convictions were "contrary to the law and evidence" and additionally that new evidence had been uncovered by

---

[1]The enhanced penalty provision of La.R.S. 14:62.8 related to a victim being present whose age is under twelve or is sixty-five or older was deleted in 2017 (effective on August 1, 2017). *See* 2017 La. Acts No. 281, § 1.

Defendant's mother after trial which allegedly established Defendant could not have been involved in the crimes. The evidence was alleged testimony from Mr. Helmer, initially a codefendant in this case. The motion was heard and denied on January 9, 2019.

On January 11, 2019, Defendant's sentencing hearing was held. Defendant reurged his motion for new trial on the ground that his mother had uncovered new evidence, which was again denied. Defendant stated he was ready to be sentenced at that time. Defendant was then sentenced to two years at hard labor for theft; eighteen years at hard labor without benefit of probation, parole, or suspension of sentence for home invasion; twelve years at hard labor without benefit of probation, parole, or suspension of sentence for aggravated burglary; and eight years at hard labor for possession of a firearm by a convicted felon. The sentences for aggravated burglary and possession of a weapon by a convicted felon were ordered to run concurrently to each other; the sentences for theft and home invasion were likewise to run concurrently to each other. The sentences for aggravated burglary and home invasion were to run consecutively; however, amounting to a total sentence of thirty years. Defendant asked if the court would reconsider running the consecutive sentences concurrently, which the trial court declined to do.

On January 30, 2019, Defendant filed a "Motion to Reconsider Sentence," which requested the trial court "reconsider [Defendant's] sentence of thirty (30) years [D]epartment of [C]orrections as [Defendant] believes it to be excessive." The motion was heard on April 17, 2019, with Defendant noting his long history of substance abuse and asking the court "to have mercy on him and consider lightening the sentence from the 30 years, or from the 18 and the 12 consecutively, to consider

reducing it, Your Honor." The trial court denied the motion, stating "I've thought about it some more, but I don't think I need to change my mind on it."

Following appellate counsel's January 8, 2020 filing of a "Motion to Supplement Record on Direct Appeal of Conviction and Sentence," this court ordered the record supplemented on January 10, 2020. As the requested transcript had originally been included in the record, appellate counsel was informed Defendant's brief was due on February 7, 2020. On February 14, 2020, counsel requested leave to file a supplemental brief due to her untimely receipt of the February 7, 2020 briefing date. Additionally, Defendant filed a brief assigning two assignments of error without argument: (1) the trial court erroneously denied the motion for new trial and (2) the trial court erroneously denied the motion to reconsider sentence. In a supplemental brief timely filed on February 21, 2020, Defendant now asserts two assignments of error: (1) the trial court erred in granting a for cause challenge by the State on potential juror Evelina Johnson, resulting in the State being allowed to exercise thirteen peremptory challenges and (2) the trial court erred in denying the motion to reconsider sentence because the consecutive sentences are unconstitutionally excessive.

In light of Defendant's failure to brief his original assignment of error that the trial court erred in denying the motion for new trial, we consider this claim abandoned. *See* Uniform Rules—Courts of Appeal, Rule 2-12.4(B)(4). Accordingly, we will only address the claims asserted in the supplemental brief. The second supplemental assignment of error corresponds to the original second assignment of error, as both allege the sentence is excessive.

**FACTS**

Defendant's convictions arise out of an incident wherein the victim, Mr. Samuel Johnson, was attacked in his sleep by two men who tied him to his bed, robbed his home, then left him tied up until he was found several hours later by two Meals on Wheels employees. This incident occurred on April 24, 2017. Law enforcement traced Mr. Johnson's stolen phone to Defendant's mother's home in Orange, Texas, where it was discovered in a bedroom. Defendant was on the bed in said bedroom, and codefendant Ms. Pence was found hiding in the closet. Numerous items taken from the victim's residence, including a Titan .25 caliber handgun, were also located at the home in Orange, Texas.

**ASSIGNMENT OF ERROR NUMBER ONE**

In Defendant's first assignment of error he contends the trial court erred in granting a for cause challenge made by the State against potential juror Mrs. Evelina Johnson. As the State exhausted its peremptory challenges, Defendant contends this ruling granted the State more peremptory challenges than allowed by law. As such, he contends his convictions should be reversed and he should be entitled to a new trial.

Initially, we note the transcript of voir dire does not identify potential jurors by name, so we will present what we believe are all of Mrs. Johnson's statements. When the court asked if anyone had family in law enforcement, Mrs.. Johnson noted she had a niece and a great niece who worked for the Calcasieu Parish Sheriff's Office, but testified she had no experience with or information about the current case.

Mrs. Johnson stated she was sixty-eight years old, had three children, five grandchildren, and two step-grandchildren. She noted she had been married for fifty

years and was a retired LPN. When asked if she had ever been the victim of a crime, Mrs. Johnson stated, that "Yes, I have been. I've had a lot of people in my family that have committed crime. I'm not good with it." She stated she had never been charged with a crime but had served on a civil jury.

When the State began discussing the fact that a defendant did not have to testify and asked if "anybody would be interested in hearing both sides?" Mrs. Johnson answered affirmatively. She testified that she had a nephew serving twenty years in prison and did not feel like his sentence was fair. When the State subsequently asked if anyone "would need to know all the answers, even the things that are beyond the elements of the crime," Mrs. Johnson again answered affirmatively.

Mrs. Johnson stated she watches the news in the afternoons and stated the more she looked at Defendant, the more she felt she had seen him on TV but could not remember the connection. She stated that she does jump to conclusions "when [she] see[s] it and hear[s] the connection of the crime." When asked if she viewed the Defendant differently because he was the defendant, she stated "I -- I have to because when I walked in I thought he was one of the attorneys; but after it was presented, then, you know, I had to look at him differently, you know. I have to know who not to talk to outside of the courtroom." Mrs. Johnson also noted that she would have to have an iron transfusion before Friday.[2]

When defense counsel questioned the voir dire about hearing from Defendant, Mrs. Johnson stated she would "have a problem making a decision if all the evidence that [she] need[ed] [wa]s not presented." Asked if she would hold it against

---

[2]This conversation took place on Wednesday, November 14, 2018.

Defendant if she believed he had the last piece of evidence she needed to hear, Mrs. Johnson noted "the jurors that I'm with would have to influence me to go a certain way." Furthermore, she noted she would have a problem making a decision if she did not have every piece of information she felt she needed presented to her.

The trial court and the attorneys met with Mrs. Johnson individually to discuss her feelings regarding the treatment of her nephew who was serving a twenty-year sentence. She testified that her nephew was a prankster who was not dangerous but was frequently in trouble. The story that she heard from her family was that her nephew "was driving a car with no license, and the -- the person -- the owner of the car had a gun under the seat, and he ran a red light, I think, and hit a police bike." She acknowledged she never got the full story but felt it was improper that he received a twenty-year sentence when he did not kill anyone. She also acknowledged that he had a criminal record that likely caught up with him. Despite this acknowledgment, however, she stated she had a problem with someone's past being used to increase their sentence, asking "how can they go back and pick up all the stuff you served time for and add that, throw that -- you know, add that to your new charge?" Mrs. Johnson expressed frustration that her nephew "was never given a chance in life," noting that by the time he serves his sentence he will be too old to train for a new life and will "have to sell drugs."

Mrs. Johnson stated she would not feel sympathy for Defendant because of her nephew's situation, stating "No, I would not compare the two; and I would try to be as fair as I can; but it – it seems like a serious crime; and it's already plain to me that I'm not going to get all the evidence I need, you know." She seemed unsure that either side would be able to give her all the information she wanted in order to make her decision. Additionally, when asked whether she would feel sorry for

6

Defendant because the charge of being a felon in possession of a firearm could enhance his penalties because of a prior conviction, she paused before admitting it may make her feel it was unfair. She elaborated that she hated "sentencing you now for what you did and we're going to resentence you for what -- the time you spent for the other stuff you did." Although Mrs. Johnson stated she would not hold the Defendant's possible decision to not testify against him, she expressed that it would be difficult to come to a conclusion without his testimony.

The State then challenged Mrs. Johnson for cause:

> I would move to strike Ms. Evelina Johnson, 144, for cause with whom we just spoke with for compounded reasons, for the health issue -- and I know she seemingly kind of rehabilitated herself there at the end when she spoke about how she could be fair; but I think the length of time she spent talking about her concerns about the justice system and how upset she is about her nephew, I -- I know she says she can be fair, Judge. I don't think that she can. And she seems just -- I was just a little concerned she anticipated there to be gaps in what we have to show, and she also kind of mentioned being concerned if Mr. Henson doesn't testify which is [sic], in a way, unfairly prejudices him; and I know, again, she came back from that, when confronted with that issue. But I just don't -- I think she -- I just don't see her being a fair juror, and I don't think she could be good for either side.

Defense counsel objected to Mrs. Johnson's removal:

> Judge, my only take on her is she said she sat on another one were [sic] someone was found innocent or not guilty and that's kind of how the jury leaned and she didn't like that the jury leaned that way, that somebody else wasn't held accountable for their actions. You know, while I think she has issues with her nephew and the way his case was handled, she also has three members of her family that's in law enforcement; and then she indicated the other way that she doesn't -- she didn't agree with the way one jury went when he was found not guilty. So, I think she would be someone who would probably hold someone accountable if she was presented with enough evidence to prove beyond a reasonable doubt.

The trial court explained its decision to grant the challenge:

> You know, it is a close one on this one, you know. This young lady, she's a little older than I am. Believe it or not, there are people older than me. But I am a little concerned about whether or not she

really could factor in the actual evidence in this case. But, honestly, Dustan, again, I'd never second guess you. That's not my job here, but I have a feeling that Charles did make a valid point that somebody has to pay for the injustice that's been served at this time. All of that being said, I am going to excuse her for cause, Juror No. 144.

The number of peremptory challenges allowed to each side is dictated by La.Code Crim.P. art. 799, which states, "In trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges, and the state twelve for each defendant. In all other cases, each defendant shall have six peremptory challenges, and the state six for each defendant." Additionally, La.Code Crim.P. art. 800 restricts when a defendant may complain about a for-cause challenge:

> A. A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefor shall be stated at the time of objection.

> B. The erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law.

Defendant contends that nothing about Mrs. Johnson justified her removal for cause; additionally, he argues the State used all of its peremptory challenges, thus Mrs. Johnson's removal acted as a thirteenth peremptory for the State. We agree that the State did use all of its peremptory challenges. The general grounds supporting a for-cause challenge are found in La.Code Crim.P. art. 797:

> The state or the defendant may challenge a juror for cause on the ground that:

> (1) The juror lacks a qualification required by law;

> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he

8

declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;

(4) The juror will not accept the law as given to him by the court; or

(5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense.

Additionally, La.Code Crim.P. art. 798(1) declares the State may challenge a juror for cause if "[t]he juror is biased against the enforcement of the statute charged to have been violated, or is of the fixed opinion that the statute is invalid or unconstitutional." This ground is a large part of the issue with Mrs. Johnson. In *State v. Dotson*, 16-473, p. 17 (La. 10/18/17), 234 So.3d 34, 45, *writ denied*, 18-177 (La. 12/17/18), 295 So.3d 340 (alterations in original), the supreme court stated:

> As noted in *State v. Miller*, 99-0192 (La. 9/6/00), 776 So.2d 396, because of the "complicated and oftentimes daunting" task faced by a trial court in deciding "challenges for cause of prospective jurors who give equivocal . . . responses during *voir dire*," "an appellate court should accord great deference to the [trial] court's ruling on a challenge for cause, which is necessarily based, in part, on the court's personal observations during questioning." *Id.* 99-0192 at 14, 776 So.2d at 405-06.

Looking at the entirety of Mrs. Johnson's answers during voir dire, we find the trial court did not abuse its great discretion in granting the State's for cause challenge of Mrs. Johnson. Although she ultimately said she could be fair, Mrs. Johnson demonstrated a particular dislike for the notion of punishing someone, or enhancing their punishment based upon a prior crime for which the individual had previously been convicted and sentenced. One of Defendant's charges was for being

9

a felon in possession of a firearm, a crime which by its very nature punishes someone for having previously been convicted of a felony. When asked about this charge, Mrs. Johnson initially gave no response. She then admitted that she would likely feel sympathy for the Defendant based upon this charge. Considering the entirety of Mrs. Johnson's voir dire, we cannot say the trial court abused its discretion in granting the State's challenge for cause regarding Mrs. Johnson. Accordingly, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In Defendant's second and final assignment of error, he contends the trial court erroneously denied his "Motion to Reconsider Sentence," given the excessive nature of Defendant's consecutive sentences totaling thirty years at hard labor. As previously noted, Defendant contended in his motion that his consecutive sentences were excessive. As Defendant points out, his charges all arise from a single act or transaction. The general rule for concurrent versus consecutive sentences is set out in La.Code Crim.P. art. 883:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

We note the following regarding consecutive versus concurrent sentences:

> When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La.C.Cr.P. art. 883. It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. *State v. McCray,* 28,531

10

(La.App.2d Cir.8/21/96), 679 So.2d 543*; State v. Derry,* 516 So.2d 1284 (La.App. 2d Cir.1987), *writ denied,* 521 So.2d 1168 (La.1988).

Concurrent sentences arising out of a single cause of conduct are not mandatory, *State v. Pickett,* 628 So.2d 1333 (La.App. 2d Cir. 1993); *State v. Nelson,* 467 So.2d 1159 (La.App. 2d Cir.1985), and consecutive sentences under those circumstances are not necessarily excessive. *State v. Ortego,* 382 So.2d 921 (La.1980), *cert. denied,* 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); *State v. Williams,* 445 So.2d 1171 (La.1984); *State v. Mills,* 505 So.2d 933 (La.App. 2d Cir.1987), *writ denied,* 508 So.2d 65 (1987).

Among the factors to be considered are the defendant's criminal history, *State v. Ortego, supra; State v. Jacobs,* 493 So.2d 766 (La.App. 2d Cir.1986); the gravity or dangerousness of the offense, *State v. Adams,* 493 So.2d 835 (La.App. 2d Cir.1986), *writ denied,* 496 So.2d 355 (La.1986); the viciousness of the crimes, *State v. Clark,* 499 So.2d 332 (La.App. 4th Cir.1986); the harm done to the victims, *State v. Lewis,* 430 So.2d 1286 (La.App. 1st Cir.1983), *writ denied,* 435 So.2d 433 (La.1983); whether the defendant constitutes an unusual risk of danger to the public, *State v. Jett,* 419 So.2d 844 (La.1982); the defendant's apparent disregard for the property of others, *State v. Parker,* 503 So.2d 643 (La.App. 4th Cir.1987); the potential for the defendant's rehabilitation, *State v. Sherer,* 437 So.2d 276 (La.1983); *State v. Lighten,* 516 So.2d 1266 (La.App. 2d Cir.1987); and whether the defendant has received a benefit from a plea bargain, *State v. Jett, supra; State v. Adams, supra.*

When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. *State v. Green,* 614 So.2d 758 (La.App. 2d Cir.1993). A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence of record.

*State v. Coleman*, 32,906, pp. 41-42 (La.App. 2 Cir. 4/5/00), 756 So.2d 1218, 1247-48, *writ denied*, 00-1572 (La. 3/23/01), 787 So.2d 1010.

Prior to imposing sentence, the trial court discussed how Defendant's drug addiction had dissolved into something beyond addiction, noting:

You've digressed into something that is horrible. You're obviously not the person that your mother worries about. On the good side, if there is such a thing, is that he didn't die as a consequence of what you did.

You're lucky. You're lucky those people were there the next morning to find him. At that age, under those conditions, he could have died. And then the sentencing would have been a lot easier here this morning, been very simple; you'd be going away for the rest of your life.

Your criminal record is quite extensive; burglary, robbery, unauthorized use of a moveable, theft.

Based on what the Court has seen, based on the record, based on the facts that were presented at the trial I have no choice but to sentence you as follows[.]

As this court noted in *State v. Bethley*, 12-853, p. 11 (La.App. 3 Cir. 2/6/13), 107 So.3d 841, 850, "[t]he imposition of consecutive sentences, however, requires particular justification beyond the standard sentencing guidelines, justification which must be articulated by the trial court at sentencing." Any such articulated justification is lacking in the instant case. The last sentence of the trial court's lead-in to the actual imposition of sentence cannot be described as particular justification; the language speaks only in generalities. The trial court did not elaborate during the hearing on Defendant's motion to reconsider, simply stating "I've thought about it some more, but I don't think I need to change my mind on it." We hold the trial court's failure to articulate why it felt Defendant's sentences for aggravated burglary and home invasion should be run consecutively, despite being based upon the same entry into the victim's home, renders Defendant's sentences improper as imposed. Accordingly, Defendant's sentences for theft and possession of a firearm by a convicted felon are affirmed. Defendant's sentences for aggravated burglary and home invasion are reversed and the case is remanded to the trial court to either impose concurrent sentences or to articulate justification for the consecutive sentences.

**CONCLUSION**

Defendant's convictions are affirmed.  Further, his sentences for theft and possession of a firearm by a convicted felon are affirmed.  However, Defendant's sentences for aggravated burglary and home invasion are reversed and the case is remanded to the trial court for resentencing, at which time the trial court shall either run Defendant's sentences concurrently or articulate justification for running them consecutively.

**CONVICTIONS AFFIRMED; SENTENCES FOR THEFT AND POSSESSION OF A FIREARM BY A CONVICTED FELON AFFIRMED; CONVICTIONS FOR AGGRAVATED BURGLARY AND HOME INVASION REVERSED AND REMANDED FOR RESENTENCING.**